In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3099

GILBERT APONTE,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO and JOHN ADREANI,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 C 8082 — **John W. Darrah**, *Judge.*

ARGUED JULY 10, 2013 — DECIDED AUGUST 29, 2013

Before BAUER, TINDER, and HAMILTON, *Circuit Judges.*

TINDER, *Circuit Judge.* The issue in this appeal is whether
plaintiff Gilbert Aponte should receive attorney's fees in this
civil-rights suit. Aponte sued four Chicago police officers,
seeking over $100,000 in damages, but a jury awarded him
only $100 against just one defendant. Aponte then requested
attorney's fees of over $100,000, which the district court
denied. He appeals that decision, arguing that the district court

applied the wrong legal test to determine his eligibility for attorney's fees. Because the court applied a permissible test in evaluating the fee request, we affirm the judgment.

## I. Background

Aponte sued Sergeant Donald DeVito and Officers John Adreani, Henry Via, and Kimberly Valenti under 42 U.S.C. § 1983 for a search in violation of the Fourth Amendment. He brought eight claims: one against each of the officers for unreasonably executing a warrant, and one against each of them for failing to prevent an unreasonable search. (He also brought a state-law claim for indemnification against the City of Chicago. *See* 745 ILCS 10/9-102.) After more than two years of pretrial litigation, a three-day jury trial was held. The evidence at trial showed that the circuit court of Cook County, Illinois, had issued a warrant to the officers to search Aponte's home for cocaine, drug paraphernalia, money, records detailing illegal drug transactions, or "any other instrumentalities" that could be used for a drug offense. Nine police officers plus a canine unit performed the search. Aponte contended that the officers significantly damaged his property while they searched his home. The officers, he elaborated, ripped open his mattress, sofa, and chair seats with a knife, broke his bedroom sets, dining set, and television, and threw his clothes onto the floor. His landlord, who owned all the home's furnishings, spent $9,462.56 refurnishing it, and Aponte contended that he reimbursed her.

At the end of the trial, the jury was instructed to consider awarding compensatory and punitive damages if it found any defendant liable. Compensatory damages were defined as

"[d]amages for the loss of and/or damages to Plaintiff's personal property; [d]amages for Plaintiff's suffering, mental anguish, emotional distress, humiliation and embarrassment." The jury was also instructed that if they "find in favor of Plaintiff but find that Plaintiff has failed to prove compensatory damages, you must return a verdict for Plaintiff in the amount of one dollar ($1.00)," a figure we often refer to as "nominal" damages, see *Carey v. Piphus*, 435 U.S. 247 (1978), but that term was not mentioned in the instructions. The verdict form, however, allotted the jury only two places to record any damages awarded: one labeled "Total Compensatory Damages" and one labeled "Total Punitive Damages." There was no space identified for the "one dollar" verdict in favor of the Plaintiff to be awarded if compensatory damages were not proved.

Aponte's counsel urged the jury to award him $25,000 in compensatory damages ($10,000 for property damages and $15,000 for emotional damages) and $100,000 in punitive damages ($25,000 from each individual defendant). The jury found for Aponte on one claim against only one defendant, Adreani, and it awarded Aponte $100, which it recorded in the space designated for "compensatory damages." (Punitive damages were not awarded.) Aponte moved the district court to amend the judgment for indemnification against the City of Chicago, *see* FED. R. CIV. P. 59(e), which the court granted.

Aponte moved for attorney's fees under 42 U.S.C. § 1988, which empowers courts to award attorney's fees as part of the costs to the "prevailing party" of a § 1983 lawsuit. He sought $116,437.50 for the 450 hours that his counsel spent working on the case. Aponte argued that, because he had successfully

litigated his constitutional claim against Adreani, he was a prevailing party and thus entitled to recover a reasonable fee. Aponte anticipated that the defendants would respond that his recovery was merely nominal and therefore unworthy of a fee award. He answered that the jury must have concluded that he had suffered actual, compensatory damages because it implicitly rejected the instruction to award only $1 if it found no compensatory damages, and, he argued, a more-than-nominal recovery deserves a fee award.

The defendants contested that Aponte is a prevailing party under § 1988, but argued—as anticipated—that even if he is, the court should significantly reduce or eliminate any award of attorney's fees. The defendants explained that because Aponte was, at best, a prevailing party who received only minimal damages, an award of no fees was appropriate. *See Farrar v. Hobby,* 506 U.S. 103 (1992). The court should not, they insisted, calculate a lodestar of a reasonable fee times reasonable hours, the methodology from *Hensley v. Eckerhart,* 461 U.S. 424, 433–37 (1983), for conventional prevailing parties.

*Farrar v. Hobby* holds that plaintiffs who bring § 1983 claims and win only "nominal" damages are still "prevailing parties" under § 1988 and thus eligible to receive reasonable attorney's fees. *See Farrar,* 506 U.S. at 113. But a reasonable attorney's fee for a nominal victor is usually zero. *Id.* at 115. In a concurring opinion, Justice O'Connor elaborated on how a court should calculate a reasonable fee once it has decided that the plaintiff achieved a mere "technical or *de minimis"* victory. *See id.* at 120–22 (O'Connor, J., concurring). A reasonable fee for a de minimis victory, she wrote, should reflect (1) the difference between the amount recovered and the damages sought,

(2) the significance of the issue on which the plaintiff prevailed relative to the issues litigated, and (3) whether the case accomplished some public goal. *See id.* at 121–22. If a court decides that the victory is minimal, it should not calculate the traditional lodestar. *See id.* at 117. This court has followed Justice O'Connor's three-factor elaboration when assessing fee awards to trifling victories. *See Hyde v. Small,* 123 F.3d 583, 585 (7th Cir. 1997); *Simpson v. Sheahan,* 104 F.3d 998, 1001 (7th Cir. 1997); *Maul v. Constan,* 23 F.3d 143, 145–47 (7th Cir. 1994).

The district court concluded that, although Aponte is a prevailing party, he should receive no attorney's fees. *Farrar* is appropriately applied in cases like this one, the court concluded, because the damages awarded were "minimal in relation to the amount of damages sought." Applying *Farrar's* three factors, the court concluded that (1) Aponte's 0.4% success rate ($100 in damages ÷ $25,000 requested = 0.4%) was insignificant; (2) Aponte lost seven of his eight Fourth Amendment claims and three of four defendants were victorious; and (3) his victory merely vindicated his own personal rights.

## II. Analysis

On appeal Aponte argues only one point: that the district court legally erred by applying *Farrar* rather than *Hensley* to his motion for attorney's fees. He does not argue that, if *Farrar* governs his motion, the district court applied its three factors incorrectly.

### A. Technical, De Minimis, and Nominal Damages

Aponte argues that *Farrar* applies only to cases of "nominal damages" of $1 (which he contrasts with "technical" or "de

minimis" damages of more than $1). Citing our decisions in *Hyde v. Small,* 123 F.3d 583, and *Estate of Enoch* ex rel. *Enoch v. Tienor,* 570 F.3d 821 (7th Cir. 2009), Aponte insists that this narrow view is the approach we have consistently taken. He explains that the plaintiffs in those cases received small compensatory-damage awards greater than $1, like he did here, and this court concluded that *Farrar* did not apply to them. He also quotes *Enoch,* which says, "In cases in which the recovery is not merely nominal … the *Farrar* analysis is not relevant." *Enoch,* 570 F.3d at 823.

But Aponte misreads those cases. First of all, we have on several occasions explained that *Farrar can* apply to cases, like Aponte's, where the plaintiff received a monetary award that is more than a nominal $1 but "minimal" relative to the amount sought. *See Cole v. Wodziak,* 169 F.3d 486, 487–88 (7th Cir. 1999) (noting that district court may apply *Farrar* "[w]hen recovery is low *enough* in relation to the demand"; recovery of $4,500 was 6% of amount sought); *Hyde,* 123 F.3d at 585 (ruling that *Farrar* can apply when plaintiff receives a small monetary award (in that case, $500) greater than $1); *Simpson,* 104 F.3d at 1001–02 (affirming district court's use of *Farrar* where plaintiff sought $75,000 but jury awarded $140; remanding because fee imposed was unreasonably high under *Farrar's* three-part test.

Second, Aponte ignores how the facts of *Hyde* and *Enoch* materially differ from his case. In *Hyde,* a jury awarded the plaintiff $500 in compensatory damages, and we concluded that because the plaintiff had not requested a specific sum of money he was not "aiming high" and did not "fall far short" of his requested relief. *See Hyde,* 123 F.3d at 585. Unlike the *Hyde* plaintiff, Aponte's recovery of only 0.4% of his requested

compensation is reasonably considered quite "far short" of his "high" goal of $25,000. (And this is without even considering the $100,000 in punitive damages for which Aponte vigorously but unsuccessfully pressed.) In *Enoch,* we concluded that *Farrar* was not appropriate because the plaintiffs obtained $635,000, an amount that was an objectively significant recovery even if it was only about 6% of the plaintiff's $10 million objective. *See Enoch,* 570 F.3d at 823. By contrast, Aponte's recovery of $100 is less than a scintilla of the damages awarded in *Enoch.* These cases therefore do not compel disturbing the district court's decision to apply *Farrar*.

But even if, as Aponte contends, a jury award greater than $1 should be considered compensatory, *Farrar* still may be appropriately applied because we do not think the logic of *Farrar* is confined to cases in which the plaintiff received no more than $1. It is true that *Farrar* involved a plaintiff who won just $1 in nominal damages after requesting $17 million. *Farrar,* 506 U.S. at 116 (O'Connor, J., concurring). Justice O'Connor commented "If ever there was a plaintiff who deserved no attorney's fee at all, that plaintiff is Joseph Farrar." *Id.* But that does not mean that *only* for plaintiffs exactly like the *Farrar* plaintiff does Justice O'Connor's analysis apply. Otherwise, she would not have used the words "nominal," "technical," and "de minimis" interchangeably in her analysis, without taking the more expedient route of simply using "$1" as the maximal amount. *See id.* at 117–23; *see also Cole,* 169 F.3d at 487–88 (recognizing that $1 is *an example* of a paltry award that does not merit attorneys fees); *Simpson,* 104 F.3d at 1001 (noting that amount *and* nature of award determine whether *Farrar* applies).

Because of the apparent uncertainty about the meaning of the terms "nominal," "technical," or "de minimis" in the context of damages awards, we wish to add some further clarity. Justice O'Connor used the terms interchangeably in *Farrar*, and we cannot see how any of these terms differ. Whether we call an award nominal, technical, or de minimis, no specific dollar amount can be assigned to these kinds of trifling awards. Their meaning is contextual and will vary on a case-by-case basis. Our earlier decisions provide helpful guidance on determining whether a monetary award is, in fact, nominal or technical. *Hyde* instructs the district court, on the one hand, to apply *Farrar* if the plaintiff was "aiming high and fell short, [and] in the process inflict[ed] heavy costs on his opponent and wast[ed] the time of the court," and, on the other hand, to use *Hensley* if "the case was simply a small claim and was tried accordingly." *Hyde,* 123 F.3d at 585. So in determining whether an award should be analyzed under *Farrar,* district courts should look at the entire litigation history, including the number of victorious versus unsuccessful claims, the amount of damages sought versus recovered, time expended by the parties, and judicial resources.

## B. Decision to Apply *Farrar*

Turning to the specifics of this case, the parties contest which standard governs our review of the district court's decision to apply *Farrar, i.e.,* its threshold decision that Aponte's victory was "minimal in relation to the amount of damages sought." *See Simpson*, 104 F.3d at 1001. As Aponte presses, de novo review is typically applied when a party challenges the district court's choice to adopt a particular legal test. *See Jaffee v. Redmond,* 142 F.3d 409, 412–13 (7th Cir. 1998)

(reviewing de novo a district court's denial of fees based "solely [on] applying rules of law"). The defendants counter that the threshold decision to apply *Farrar* is a mixed fact-and-law-based inquiry, and just as the discretionary decision to grant or deny attorneys' fees is reviewed for an abuse of discretion, so should the decision to apply *Farrar. See Leffler v. Meer,* 60 F.3d 369, 372 (7th Cir. 1995).

The idea of abuse-of-discretion review has some support in our case law. We identified in *Hyde* the case-specific details (magnitude of victory relative to amount sought and resources expended) for a district court to weigh in deciding if *Farrar* governs a case. *See Hyde*, 123 F.3d at 585. In general, case-specific rulings that are "judgmental, managerial, or otherwise discretionary, rather than being either legal or factual," are reviewed for an abuse of discretion. *Thomas v. Gen. Motors Acceptance Corp.,* 288 F.3d 305, 308 (7th Cir. 2002). Thus, the decision to impose a sanction on a plaintiff is a "classic judgmental ruling" of judicial management, *see Thomas,* 288 F.3d at 308, because a judge must determine if a plaintiff needlessly burdened its opponent or the court, *see Kunz v. DeFelice,* 538 F.3d 667, 677 (7th Cir. 2008); *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 646–47 (7th Cir. 1992). Likewise, the comparison under *Hyde* of the size of an award to a case's goals and costs on the parties and the court is a case-specific and management-oriented inquiry that might be better reviewed for abuse of discretion. *See Strange v. Monogram Credit Card Bank of Ga.,* 129 F.3d 943, 945–46 (7th Cir. 1997) (reviewing for abuse of discretion argument that district court erred by straying from *Hensley*).

But for now we need not decide which standard of review governs because Aponte loses whether we review de novo or for an abuse of discretion. We begin by examining the district court's decision for abuse of discretion. In terms of *Hyde's* inquiry into whether Aponte was "aiming high and fell far short," the district court reasonably concluded that his victory was negligible. After pursuing four defendants during more than two years of litigating eight constitutional claims on which he requested $25,000 in property and emotional damages, the jury valued his injury at only $100 against just one defendant. This reasonably suggests that Aponte was "aiming for the big bucks," and his paltry recovery of only 0.4% of his requested relief is, practically, more of a failure than a victory. *See Hyde,* 123 F.3d at 584–85; *see also Cole,* 169 F.3d at 487–88 (concluding that recovery of $4,500 in § 1983 suit, though "more than a pittance," was low enough, compared to requested $75,000, to invoke *Farrar*); *Simpson,* 104 F.3d 998 (approving of district court's choice to apply *Farrar* to § 1983 suit where plaintiff sought $75,000 and jury awarded $140). *Hyde* also suggests that, in addition to comparing monetary recovery to damages requested, the district court also assess whether court resources or defense costs were needlessly exhausted. But neither the court nor the parties discuss these factors, so in this case the decision to apply *Farrar* rests solely on the "aim high, fall short" factor. On this factor, the decision to apply *Farrar* appears reasonable.

Aponte fares no better under de novo review. The district court generously compared only the compensatory damages Aponte received to the compensatory damages that he sought; the court did not consider that he also asked for $25,000 in

punitive damages from Officer Adreani and received zero, or that he asked for another $75,000 in punitive damages from the three victorious defendants. Considering those amounts—as we may, *see Briggs v. Marshall*, 93 F.3d 355, 358, 361 (7th Cir. 1996) (considering entire damage award sought against all defendants, including those who received favorable verdicts)—*Farrar* would properly apply because Aponte's recovery is even *more* minimal in comparison to what he sought, a barely noticeable 0.08% ($100 ÷ $125,000 = 0.08%).

Aponte contends that, based on the jury instructions and the verdict form, the award of $100 is not nominal, and so *Farrar* should not apply under de novo review. The jury was instructed that if Aponte failed to prove compensatory damages, it "must return a verdict" of $1. Aponte believes that because the jury wrote "$100" in the space for compensatory damages, and because it presumably followed the instruction to give only $1 if Aponte did not prove compensatory damages, the jury therefore did not award nominal damages. Even if Aponte is correct, we have already explained that small compensatory awards above $1 may nonetheless warrant the *Farrar* test.

But Aponte's premise that the jury intended to compensate him, rather than accord him a mere nominal victory, is questionable for two reasons. First, as previously noted, the verdict form contained no place to record anything other than compensatory or punitive damages; it essentially forced the jury to award either compensatory or punitive damages, or both, without a place for listing a one-dollar award if they found in favor of Aponte but he failed to prove compensatory damages. So Aponte's inference from the verdict form about the jury's

intent is unconvincing. Second, Aponte's inference about the jury's intent also ignores the inconsistency between his evidence of the cost of replacement furniture and the $100 award. His evidence, a receipt listing each replacement furnishing and corresponding purchase price, contains no item or items that cost $100. If Aponte's monetary award matched any of the prices on the receipt, we might have been more inclined to conclude that the $100-award was designed to compensate him for property damages resulting from the search. None do, and so it would seem that, at best, the $100 was pegged on the jury's assessment of Aponte's "suffering, mental anguish, emotional distress, humiliation and embarrassment." Nonetheless, it is still a very small award for such harms, diluting the notion of compensation.

Last, Aponte argues that, by denying him attorneys' fees, the district court has rewarded the defendants for prolonging an easily settled suit because they could have readily made an offer of judgment to resolve his relatively small claim short of trial. *See* FED. R. CIV. P. 68; *Payne v. Milwaukee Cnty.*, 288 F.3d 1021, 1024 (7th Cir. 2002). But Aponte ignores that he produced in discovery early in the lawsuit the receipt for nearly $10,000, the cost to him of replacing his furnishings damaged during the search. This receipt alone tells us that he was not seeking a modest award that the defendants could have readily settled, but rather he was seeking substantial damages. We thus conclude that the decision to apply *Farrar* was correct, regardless of the standard of review.

## C. Application of *Farrar*

Aponte does not argue that, if *Farrar* governs this case, the district court unreasonably applied the three *Farrar* factors in determining the amount of the fee; nonetheless, we briefly address whether the district court abused its discretion in ruling that under *Farrar* a reasonable fee here is no fee. *See Briggs,* 93 F.3d at 361. Those three factors, articulated in Justice O'Connor's concurrence, are the difference between amounts sought and recovered, the significance of the legal issue on which the plaintiff prevailed compared to those litigated, and public goal achieved. *See Farrar,* 506 U.S. at 121–22; *Simpson,* 104 F.3d at 1001. Of these three factors, the sum-awarded-versus-requested (which is also part of the threshold inquiry into whether to apply *Farrar)* is the most important. *See Simpson,* 104 F.3d at 1001. As with the threshold inquiry, the district court reasonably concluded that a recovery of $100, just 0.4% of the compensation Aponte requested, is trivial. The other two factors also justify no award because a victory on just one of eight legal claims is not significant, and the minimal money awarded reflected a mere personal victory without any identifiable, broader import to the public. *See Briggs,* 93 F.3d at 361.

## III. Conclusion

The judgment of the district court is AFFIRMED.