Shirley EDDLEMAN,
Plaintiff/Appellant,

v.

SWITCHCRAFT, INC.,
Defendant/Appellee.

No. 89–3514.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 14, 1990.
Decided March 11, 1991.

Yolanda Haces, Richard Flader, Flader & Haces, Chicago, Ill., for plaintiff-appellant.

Thomas H. Link, Schaumburg, Ill., Robert V. Nystrom, River Forest, Ill., for defendant-appellee.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Plaintiff-appellant Shirley Eddleman filed a discrimination suit under the Age Discrimination in Employment Act (ADEA). After a jury trial, the district court entered a judgment in favor of Ms. Eddleman for $10,838.[1] Plaintiff then filed a motion for costs including attorney's fees under ADEA, 29 U.S.C. § 626(b) and the Civil Rights Attorney's Fee Awards Act, 42 U.S.C. § 1988, seeking $21,383.10. With this claim, she submitted a statement that her attorney had spent 168.8 hours on the case. While her attorney claimed an hourly rate of $125, the appropriateness of this rate was disputed by Switchcraft, Inc. ("Switchcraft"). The district court awarded $3,312.67 in attorney's fees plus $283.10 in costs. It is from this $3,312.67 award of attorney's fees that the plaintiff now appeals. We vacate the judgment of the district court and remand for further proceedings.

# I

## FACTS

Ms. Eddleman brought an action in the district court pursuant to the ADEA, 29 U.S.C. §§ 621–634. She alleged that she had been the subject of willful discrimination on the basis of her age when she was dismissed by her employer, Switchcraft. In her complaint, Ms. Eddleman stated that she worked as a secretary for Switchcraft for over three years and had received excellent evaluations. She further alleged that, in 1983, at the age of 46, she was discharged without prior notice that her work was unacceptable. Her replacement was 22 years old. Ms. Eddleman sought reinstatement with full seniority credit for her previous term of employment, back pay, compensatory damages, punitive damages, reasonable costs and attorney's fees.

At the time of trial, Ms. Eddleman sought approximately $70,000 plus costs and attorney's fees. The case was heard before a jury between March 28, 1988 and March 31, 1988. Ms. Eddleman's counsel neglected to introduce evidence of damages in her case in chief. The district court then bifurcated the proceeding and allowed testimony on damages. Out of the presence of the jury, the district court stated:

> The plaintiff's lawyer was negligent, pure and simple. The plaintiff's lawyer failed to do something that an attorney should do, and that is to elicit from her client testimony with regard to damages.

The jury returned a verdict in favor of Ms. Eddleman and awarded her $14,534 in damages; this award was reduced by the amount of unemployment compensation Ms. Eddleman received to $10,838.

# II

## ANALYSIS

Under the ADEA and the Civil Rights Attorney's Fee Awards Act, a prevailing party is entitled to recover reasonable attorney's fees. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983); *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1159 (7th Cir.1989). Having won her suit, Ms. Eddleman is entitled to an award of attorney's fees as a prevailing party. The dispute in this case centers on the appropriate amount of attorney's fees awarded. Ms. Eddleman contends that the district court inappropriately reduced the attorney's fees award requested because it erroneously relied on a contingency fee agreement executed by Ms. Eddleman and her attorney. Switchcraft counters that the district court properly awarded Ms. Eddleman reduced attorney's fees because it identified permissible factors, including an existing contingency fee agreement, indicating the reasonableness of Ms. Eddleman's fee request.

### 1.

■ Given the factual nature of the analysis, this court's review of the amount of attorney's fee awards is limited. *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1108 (7th Cir.1990). This court will not disturb a determination of attorney's fees unless we find that the district

---

**1.** The court deducted from the jury award approximately $4,000 Ms. Eddleman received in unemployment compensation.

court abused its discretion in making a fee award. *Fleming v. County of Kane*, 898 F.2d 553, 564 (7th Cir.1990); *Tomazzoli v. Sheedy*, 804 F.2d 93, 97 (7th Cir.1986).[2] The ultimate focus in analyzing an award of attorney's fees is determining *reasonable* compensation, in light of all the circumstances, for the services of the prevailing plaintiff's attorney. *See Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989).

■ Nevertheless, the Supreme Court has made it clear that, in determining an attorney's fee award, certain basic principles of methodology must be followed. In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court announced certain guidelines for calculating reasonable attorney's fees. A district court should begin its determination by multiplying the hours reasonably expended by a reasonable hourly rate to arrive at a base figure commonly known as a "lodestar." *Blanchard*, 489 U.S. at 94, 109 S.Ct. at 944; *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *Jackson v. Illinois Prisoner Review Bd.*, 856 F.2d 890, 894 (7th Cir.1988). As the Supreme Court recently reemphasized, the lodestar approach is the "centerpiece of attorney's fee awards," under 42 U.S.C. § 1988. *Blanchard*, 489 U.S. at 94, 109 S.Ct. at 944. Indeed, the lodestar calculation is presumed to be a reasonable fee award, as contemplated by the statute. *Riverside v. Rivera*, 477 U.S. 561, 568, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986) (plurality opinion); *Graham*, 915 F.2d at 1109.

Nevertheless, in *Hensley*, the Supreme Court also cautioned that a variety of factors may justify an adjustment in the lodestar figure.[3] *See Hensley*, 461 U.S. at 429–30 n. 3, 103 S.Ct. at 1937 n. 3. These factors include whether the fee is fixed or contingent, the experience, reputation and ability of the attorney and the skill requi-

site to perform the legal services properly. *Id.* at 430 n. 3, 103 S.Ct. at 1937 n. 3. The Court concluded that, when employing these factors in a case when the plaintiff obtained only partial success on related claims, the district court should also consider the degree of a plaintiff's success in calculating a reasonable fee award. *See Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943.

■ In subsequent cases, the Supreme Court has elaborated on this last factor— the degree of a plaintiff's success. Although it has continued to recognize that the amount of damages a plaintiff recovers is "certainly relevant" in the determination of an appropriate attorney's fee award, it has also stressed that the amount of the plaintiff's award alone should not dictate a proportionate amount to be awarded in attorney's fees. *See Rivera*, 477 U.S. at 574, 106 S.Ct. at 2694 (plurality opinion). In short, fee awards should not be linked mechanically to a plaintiff's award. Again, in *Blanchard*, the Supreme Court emphasized that the determination of reasonable fees should be made in light of all the circumstances. 489 U.S. at 91–95, 109 S.Ct. at 943–45. The "contingency-fee factor is simply that, a factor." *Id.* at 93, 109 S.Ct. at 944.

2.

As we have noted already, when reviewing attorney's fee questions, we must give great weight to the decision of the district court. As the Supreme Court noted in *Hensley:*

> We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.

---

**2.** *See also Ustrack v. Fairman,* 851 F.2d 983, 987 (7th Cir.1988) ("Not only is the trial court in a much better position than the appellate court to make this determination, but neither the stakes nor the interest in uniform determination are so great as to justify microscopic appellate scrutiny.")

**3.** The Court noted the House and Senate Reports' reference to the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). The Supreme Court also noted that these factors were derived directly from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106 (1980).

461 U.S. at 437, 103 S.Ct. at 1941. Certainly, "[a] request for attorney's fees should not result in a second major litigation." *Id.* at 437, 103 S.Ct. at 1941. Nevertheless, as the Supreme Court also noted in *Hensley*, "[i]t remains important … for the district court to provide a concise but clear explanation for its reasons for the fee award." *Id.* at 437, 103 S.Ct. at 1941; *see also Jardien*, 888 F.2d at 1159 n. 9. Such an analysis is necessary in order to permit us to fulfill our obligation to review, albeit deferentially, any objection to the fee award. *See Tomazzoli*, 804 F.2d at 97. Such an explanation is particularly necessary when the fee award departs from the lodestar amount. *See Fleming*, 898 F.2d at 564; *Lenard v. Argento*, 808 F.2d 1242, 1247 (7th Cir.1987); *Sanchez v. Schwartz*, 688 F.2d 503, 506 (7th Cir.1982).

■ The record before us makes clear that the district court considered many permissible factors in deciding to adjust downward the recoverable attorney's fee. It is not clear to us, however, how the district court determined that the contingency fee arrangement was the appropriate recoverable attorney's fee. The fundamental problem is that, although *Hensley* "directed lower courts to make an initial estimate of reasonable attorney's fees by applying prevailing billing rates to the hours reasonably expended on successful claims," *Blanchard*, 489 U.S. at 94, 109 S.Ct. at 944, citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), it appears that the district court never completed the calculation of its lodestar figure. The district court began its determination of attorney's fees by evaluating the number of hours Ms. Eddleman's attorney spent representing the plaintiff. The court examined the time spent by Ms. Eddleman's attorney "based upon the time the court believes it would take a competent lawyer to perform certain of the tasks [performed by Ms. Eddleman's counsel]." The district court then specifically identified instances of what it considered an unreasonably high number of hours expended by plaintiff's attorney; in its calculation the district court considered the skills of Ms. Eddleman's attorney and the requisite skill to present the case. Both these factors are relevant to the calculation of a reasonable fee award identified in *Hensley*. Further, as noted in *Hensley*, the district court has discretion in the manner in which to employ these factors. *Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941; *Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1133 (7th Cir.1987) (court may identify specific hours unreasonably expended or may simply reduce the entire award). However, there is no indication that the court established the other key factor in the lodestar calculation, a reasonable hourly rate for Ms. Eddleman's attorney. While the record contains conflicting information as to a reasonable hourly rate for Ms. Eddleman's attorney, the district court order does not contain a conclusion as to a reasonable hourly rate. As a result of this omission, we are not confident that the district court established a lodestar figure.

We are also concerned that the district court used the contingent fee agreement executed by Ms. Eddleman and her attorney as the *determinative* factor in its fee award computation. This court has recognized that a contingent fee agreement can serve as an estimation of an attorney's reasonable fee expectations, particularly where the record does not provide information as to a reasonable hourly rate. *See Jardien*, 888 F.2d at 1160; *Hagge v. Bauer*, 827 F.2d 101, 111 (7th Cir.1987); *Lenard*, 808 F.2d at 1247–48. However, the district court's order suggests that the contingency fee agreement may not have provided evidence of a reasonable rate but rather was the determinative factor in the district court's fee calculation. The district court simply stated that Switchcraft, "should not have to pay more … than the amount for which plaintiff's counsel contracted with plaintiff." Accordingly, we cannot conclude, as did the panel in *Hagge*, that the district court's emphasis on the contingency fee as a reasonable rate was simply an alternative holding. *See Hagge*, 827 F.2d at 111. The district court may well have considered it outcome-determinative on the amount of attorney's fees.

### Conclusion

While it is clear the district court considered relevant factors when making a downward adjustment in Ms. Eddleman's requested attorney's fee award, it is not clear that the court employed the factors in the appropriate manner. The district court has the discretion to weigh relevant factors. However, it may not substitute these factors for the lodestar calculation. Thus, while a contingency fee agreement remains a relevant factor, it cannot serve as the determinative factor in a fee award. Accordingly, we must vacate the judgment of the district court and remand the case to the district court for recalculation of the attorney's fees award in accordance with this opinion. We emphasize that we express no opinion on the appropriate amount of attorney's fees.

IT IS SO ORDERED.